J-A17006-19

2019 PA Super 225

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT WILLIAMS | : | |
| | : | |
| Appellant | : | No. 3880 EDA 2017 |

Appeal from the Judgment of Sentence November 6, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011614-2007

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT WILLIAMS | : | |
| | : | |
| Appellant | : | No. 2242 EDA 2018 |

Appeal from the PCRA Order Entered June 25, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011614-2007

BEFORE: PANELLA, P.J., OLSON, J., and FORD ELLIOTT, P.J.E.

OPINION BY PANELLA, P.J.: **FILED JULY 24, 2019**

Robert Williams appeals from the June 25, 2018 order of the Philadelphia County Court of Common Pleas denying his petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546. Williams argues he is entitled to PCRA relief in the form of a new trial based on after-discovered evidence. The Commonwealth concedes a new trial is required.

After careful review, we conclude the PCRA court erred in denying Williams' PCRA petition. Therefore, we reverse the decision of the PCRA court and grant Williams a new trial.

On January 24, 2007, Williams was arrested and charged with various drug and gun related offenses. The case proceeded to a non-jury trial. The Commonwealth presented testimony from a single witness, former Philadelphia Police Officer Reginald Graham. Following the close of evidence, the trial court found Williams guilty of carrying a firearm without a license, carrying a loaded weapon, carrying a firearm in public in Philadelphia, possession of an instrument of crime, simple assault, possession of a controlled substance with intent to deliver, and intentional possession of a controlled substance by a person not registered.[1] On January 16, 2009, the court sentenced Williams to 11 ½ to 23 months' imprisonment, followed by 10 years of probation. Williams did not seek direct review after sentencing.

While serving probation, Williams committed numerous technical violations. Despite these technical violations, the trial court demonstrated patience and leniency by allowing Williams to continue on supervision. However, on November 6, 2017, Williams appeared before the trial court for a violation of probation hearing after which the trial court revoked Williams'

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1), 6106.1(a), 6108, 907(a), 2701(a), 35 P.S. §§ 780-113(a)(3), and 780-113(a)(16), respectively.

probation and imposed a state prison sentence of 2 to 4 years' incarceration. Williams appealed the revocation and sentence to this Court.

On February 14, 2018, while his direct appeal from the revocation of probation was still pending, Williams filed a PCRA petition. In his petition, Williams alleged he recently discovered serious allegations of misconduct against former Officer Graham. Due to the nature of the allegations, the Commonwealth agreed Williams should receive PCRA relief in the form of a new trial. However, following an evidentiary hearing, the PCRA court denied the petition. Williams again appealed.

In this consolidated appeal, Williams raises three issues for our review. However, we need not consider all of Williams' issues on appeal because our disposition of his PCRA petition will resolve the entire matter. Therefore, we address whether Williams' claim of after-discovered evidence entitles him to a new trial pursuant to the PCRA.

As an initial matter, we must decide whether the pendency of Williams' direct appeal from the judgment of sentence after his probation was revoked rendered his subsequent PCRA petition a legal nullity. Generally, a petitioner, such as Williams, may only file a PCRA petition after he "has waived or exhausted his direct appeal rights." ***Commonwealth v. Leslie***, 757 A.2d 984, 985 (Pa. Super. 2000) (citation omitted). If a petition is filed while a direct appeal is pending, the PCRA court should dismiss it without prejudice towards

the petitioner's right to file a petition once his direct appeal rights have been exhausted. *See id*.

However, revocation of probation does not materially alter the original judgment of sentence. *See Commonwealth v. Anderson*, 788 A.2d 1019, 1021 (Pa. Super. 2001). Therefore, probation revocation creates a wrinkle in the otherwise straightforward determination of finality. *See id*. For issues challenging the revocation and the sentence imposed after revocation, a new date for finality is created. *See id*. But challenges to the original trial and sentencing are not affected by the revocation. *See id*., at 1022. To be timely, post-conviction challenges to the original trial and sentencing must be raised within one year of the date the original judgment of sentence became final. *See id*.

Here, this appeal consolidates an appeal from the revocation of Williams' probation and an appeal from the denial of Williams' PCRA petition that was filed while the revocation appeal was still pending. The PCRA petition does not challenge any aspect of the probation revocation. Instead, it is focused exclusively on the underlying trial and conviction. Under *Anderson*, we conclude that Williams was not precluded from filing his PCRA petition while his appeal from the revocation of his probation was still pending.

Turning to his petition, we note that we review the denial of post-conviction collateral relief to determine whether the PCRA court's findings are

supported by the record and free from legal error. ***See Commonwealth v. Small***, 189 A.3d 961, 971 (Pa. 2018).

Prior to reaching the merits of Williams' claim, we must first consider the timeliness of his PCRA petition. ***See Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014). The time limitations of the PCRA are jurisdictional in nature and, as such, a court cannot address the merits of an untimely petition. ***See Commonwealth v. Robinson***, 837 A.2d 1157, 1161 (Pa. 2003). All PCRA petitions "including a second or subsequent petition shall be filed within one year of the date the judgment [of sentence] becomes final". 42 Pa.C.S.A. § 9545(b)(1).

Williams' original judgment of sentence became final on February 16, 2009, when the time to file a direct appeal with this Court expired. ***See*** 42 Pa.C.S.A. § 9545(b)(3) ("[a] judgment becomes finals at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."); ***see also*** Pa.R.A.P. 903(a) (requiring notice of appeal to be filed within 30 days after entry of appealable order). His petition, filed 9 years later, is patently untimely. Thus, the PCRA court lacked jurisdiction to review Williams' petition unless he was able to successfully plead and prove an exception to the PCRA's time limitation.

To overcome the PCRA's time-bar, a petitioner must allege and prove one of three exceptions. ***See*** 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Here, Williams

argues that his petition qualifies for the newly discovered facts exception. The newly discovered facts exception provides:

> **(b) Time for filing petition**. --
>
> (1) any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.

42 Pa.C.S.A. § 9545(b)(1)(ii). Even if this exception applies, Williams' PCRA petition will only be considered if it was "filed within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).[2]

Williams concedes his petition is facially untimely, but contends he satisfied the newly discovered facts exception to the PCRA's time-bar. **See** Supplemental PCRA Petition, filed 5/16/18, at ¶ 21 (asserting the initial petition was timely pursuant to the newly discovered facts exception to the PCRA time limitations). The PCRA court agreed, and found Williams' petition satisfied the newly discovered facts exception to the PCRA's 1-year time-bar. **See** PCRA Court Opinion, filed 6/25/18, at 15-16. The Commonwealth also

---

[2] On October 24, 2018, the General Assembly amended section 9545(b)(2) of the PCRA statute to expand the time for filing a petition from 60 days to one year from the date the claim could have been presented. **See** 2018 Pa.Legis.Serv.Act 2018-146(S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, *i.e.* December 24, 2017, or thereafter. Thus, this amendment does not apply to Williams' petition.

agrees that Williams' petition meets this exception. **See**, **generally**, Appellee's Brief. Upon review of the PCRA court's factual findings and conclusions related to the issue of timeliness, we find no error or abuse of discretion. Therefore, we find no reason to disturb the PCRA court's conclusion that Williams established his petition qualified for the newly discovered facts exception to the PCRA's time limitation.

We turn now to the substantive merits of Williams' petition. Williams seeks relief pursuant to a claim of after-discovered evidence.[3] In order to obtain relief based on after-discovered evidence, Williams must show that the evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely

---

[3] There is an important and often misapprehended distinction between the newly discovered facts exception to the time limitations of the PCRA and after-discovered evidence as a basis for substantive relief. The Supreme Court of Pennsylvania offered the following clarification:

> To qualify for an exception to the PCRA's time limitations under subsection 9545(b)(1)(ii), a petitioner need only establish that the facts upon which the claim is based were unknown to him and could not have been ascertained by the exercise of due diligence. However, where a petition is otherwise timely, to prevail on an after-discovered evidence claim for relief under subsection 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

**Commonwealth v. Burton**, 158 A.3d 618, 629 (Pa. 2017).

corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Pagan***, 950 A.2d 270, 292 (Pa. 2008) (citation omitted). Williams was required to prove each of the four elements by a preponderance of the evidence. ***See Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012).

Here, however, Williams' burden was diminished by stipulation with the Commonwealth. Williams and the Commonwealth entered into a lengthy stipulation of facts that addressed many, if not all, of the elements of Williams' claim.

A stipulation is an agreement between opposing parties to resolve factual issues in the case. ***See*** 1 West's Pa. Prac., Evidence § 127 (4th ed.). "Because the parties are in agreement as to [the] facts contained in the stipulation, they are controlling." ***Falcione v. Cornell School Dist.***, 557 A.2d 425, 428 (Pa. Super. 1989). For that reason, the factual issues to be decided were limited by the following stipulations:

1. The affiant on the search warrant and the only Commonwealth witness at Williams' trial was former Philadelphia Police Officer Reginald Graham.

2. The Commonwealth does not stand behind the credibility of Officer Graham's testimony at Williams' trial.

3. In an FBI interview, former Philadelphia Police Officer Jeffrey Walker alleged that Officer Graham engaged in theft as a police officer several years before Williams' arrest and trial.

4. Officer Walker stated in a sworn affidavit that Officer Graham engaged in criminal misconduct.

5. The Philadelphia Police Department Board of Inquiry found Officer Graham guilty of theft and lying and recommended his dismissal from the police department. Officer Graham resigned from the police department.

6. In a sworn affidavit, former Philadelphia Police Officer Jerold Gibson contradicted Officer Graham's trial testimony regarding Williams' arrest.

7. On March 8, 2018, the Commonwealth disclosed to Williams a partial copy of the "Police Misconduct Review Committee Spreadsheet," which includes Officer Graham for having been investigated by federal authorities.

8. In a subsequent disclosure to Williams, the Commonwealth stated that there was information concerning Officer Graham's misconduct as of September 7, 2014, which was not made available to Williams prior to March 8, 2018.

9. The sworn affidavit of Bradley Bridge, Esquire states that the Commonwealth agreed to PCRA relief, without an evidentiary hearing, in over 1500 cases, where convictions were based on testimony of police officers considered not credible.

10. The PCRA petitions of three individuals arrested by Officer Graham were granted relief without an evidentiary hearing.

11. The Commonwealth agrees that Williams is entitled to relief in the form of a new trial.

*See* Defendant's Exhibit D-3, PCRA Hearing, 6/18/18.

Moving to the first inquiry of the after-discovered evidence test, Williams claims the evidence of Graham's misconduct could not have been obtained prior to the close of his 2008 trial, even by the exercise of reasonable diligence. *See* Appellant's Brief, at 48. Pursuant to the stipulation, the

Commonwealth did not notify Williams of its concerns with Graham's credibility issues until March 8, 2018. Williams contends he first learned of Graham's credibility issues on February 13, 2018, when an investigation by the *Philadelphia Inquirer* revealed that former Officer Graham was on the Commonwealth's "do not call" list. *See id*.

We agree the evidence of Graham's misconduct was unavailable at the time of Williams' 2008 trial. In its brief, the Commonwealth acknowledges Williams could not have discovered information regarding Graham's misconduct. *See* Appellee's Brief, at 12. Even though prosecutors were aware of corruption allegations against Graham as early as 2014, the Commonwealth did not inform Williams or his counsel of this information any time prior to 2018. *See id*. As such, the new evidence could not have been obtained at the time of Williams' trial, even by the exercise of reasonable diligence.

Williams further contends the new evidence of Graham's misconduct is not merely corroborative or cumulative. *See* Appellant's Brief, at 48. Instead, Williams asserts the evidence "is of a different character than any evidence presented at the trial." *Id*. At Williams' 2008 trial, defense counsel offered no evidence of Graham's corruption. *See id.*

At the PCRA hearing, Williams introduced the sworn affidavits of former Philadelphia Police Officers Jerold Gibson and Jeffrey Walker in support of his petition. According to his affidavit, Gibson was one of the police officers present during Williams' arrest on January 24, 2007. *See* Defendant's Exhibit

A, PCRA Hearing, 6/18/18. Gibson's affidavit also states he did not see Williams with a gun. *See id*. While Walker was not involved in Williams' arrest, his affidavit states he engaged in corruption with Graham, such as manufacturing probable cause for search warrants and misusing informants, as members of the Narcotics Field Unit. *See* Defendant's Exhibit B, PCRA Hearing, 6/18/18. Consequently, Williams argues these affidavits support his petition for PCRA relief.

In *Commonwealth v. Small*, 189 A.3d 961 (Pa. 2018), our Supreme Court considered the meaning of "merely corroborative or cumulative evidence" as it relates to after-discovered evidence. The Supreme Court elaborated that after-discovered evidence "is merely corroborative or cumulative . . . if it is of the same character and to the same material point as evidence already adduced at trial." *Id*., at 974. On the other hand, if after-discovered evidence "is of a different and 'higher' grade or character, though upon the same point, or of the same grade or character on a different point," the Supreme Court held it is not merely corroborative or cumulative. *Id*. Thus, after-discovered evidence that is of a higher grade or character may support the grant of a new trial. *See id*.

We conclude the evidence of Graham's criminal conduct is not merely corroborative or cumulative. The after-discovered evidence introduced by Williams at the PCRA hearing — namely, the affidavits of arresting Officer Jerold Gibson and Officer Jeffrey Walker and evidence of Graham's corruption

- 11 -

— is of a different character than the evidence presented at his 2008 trial. **See** N.T., PCRA Hearing, 6/18/18, at 85-87. The essence of the trial defense was that the events of January 24, 2007 happened much differently than as described by Graham. If information from these sources had been available, Williams could have used it to bolster his claims of innocence. Therefore, this new evidence is not merely cumulative or corroborative, as Williams was unable to raise a corruption theory defense at trial without it.

Next, Williams asserts the evidence from the Philadelphia Police Department, the Commonwealth, and former Officers Gibson and Walker would not be used solely to impeach Graham's credibility. **See** Appellant's Brief, at 49. Instead, Williams argues "[t]he new evidence undermines the testimony of the only affiant on the application for a search warrant . . . and the Commonwealth's only trial witness: Graham." **Id**. In making this assertion, Williams relies on **Commonwealth v. McCracken**, 659 A.2d 541 (Pa. 1995), for the proposition that "[w]here the new evidence undermines key testimony from an essential witness, it is not properly categorized as being used 'solely to impeach' a witness." Appellant's Brief at 49. Therefore, Williams urges us to find the new evidence of Graham's misconduct would satisfy the third inquiry of the after-discovered evidence test.

In **McCracken**, our Supreme Court addressed the recantation of the only witness who identified the defendant at trial. The defendant filed a PCRA petition asserting this recantation was after-discovered evidence that entitled

him to a new trial. *See id*., at 543. Because the witness was the only person at trial to identify the petitioner, the Court found this evidence would not be solely used as impeachment evidence at a new trial. *See id*., at 550.

We conclude the sworn affidavits given by Gibson and Walker would not be used solely to impeach credibility. Graham was the only witness to incriminate Williams at trial. *See* Defendant's Exhibit D-3, PCRA Hearing, 6/18/18. To refute Graham's trial testimony, Williams' counsel introduced the sworn affidavits of former Officers Gibson and Walker at the PCRA evidentiary hearing. *See* N.T., PCRA Hearing, 6/18/18, at 85-86. In his affidavit, Officer Gibson asserted, contrary to Graham's testimony, that Williams did not point his gun at former Officer Graham or any other officer. *See* Defendant's Exhibit A, PCRA Hearing, 6/18/18. Rather, Gibson observed Williams attempt to discard his weapon. *See id*. Although Walker was not involved in Williams' arrest, his affidavit stated he believed Graham fabricated the probable cause required for a search warrant, after reviewing the preliminary arrest report in the case. *See* Defendant's Exhibit B, PCRA Hearing, 6/18/18. Accordingly, the affidavits provide a much different factual scenario than presented at Williams' non-jury trial in 2008. Given the otherwise unsubstantiated nature of Graham's testimony, the Commonwealth states it would never again call Graham as a witness at trial. *See* Appellee's Brief, at 19. Thus, this after-discovered evidence would not, indeed could not, be used as impeachment evidence at a new trial.

Finally, Williams asserts the new evidence would likely compel a different verdict at a new trial. **See** Appellant's Brief, at 49. In particular, Williams argues the new evidence "contradicts the testimony of Graham—the only affiant on the applicable search warrant, and the Commonwealth's only trial witness." **Id**. Further, Williams contends, based on the stipulation, the Commonwealth "does not have confidence in the credibility of [Officer] Graham's testimony in this case. . . ." **Id**., at 50. According to Williams, "[t]his fact alone plainly satisfies the fourth inquiry." **Id**.

Our Supreme Court in **Commonwealth v. Mount**, 257 A.2d 578 (Pa. 1969), specifically addressed the fourth inquiry within the context of an essential witness proffering false testimony at trial. In **Mount**, a three-judge panel sentenced the petitioner to death, after finding that he raped and killed the victim. **See id**., at 579. On appeal, the petitioner argued that the Court should disregard the laboratory technician's testimony because she lied about her professional qualifications in other criminal cases. **See id**. The Court found the fact-finder, acting upon the technician's apparent academic qualifications, relied heavily on her testimony to determine that the petitioner raped the victim. **See id**., at 581-582. As a result, the Court found that, without the technician's testimony, there would likely be a different outcome in a new trial. **See id**., at 581.

We conclude the after-discovered evidence is of such a strong nature and character that a different verdict will likely result at a retrial. Williams was

convicted based upon the testimony of former Officer Graham. In its brief, the Commonwealth now states "[i]t is axiomatic that it cannot call a witness whose credibility it mistrusts." Appellee's Brief, at 19. The stipulation clearly indicates the Commonwealth has reason to doubt the veracity of its only witness at Williams' trial. Following Williams' 2007 arrest, an investigation by the Philadelphia Police Board of Inquiry determined that Graham engaged in criminal conduct as a police officer. *See* Defendant's Exhibit D-3, PCRA Hearing, 6/18/18. As the stipulation provides, the Board of Inquiry found that Graham committed theft, prior to Williams' trial, and then lied about it during the internal affairs investigation. *See id*.[4] Even if Graham were called to testify at a new trial, the Commonwealth asserts it would have "an affirmative duty to correct the testimony of a witness which [the prosecutor] knows to be false." Appellee's Brief, at 19. As in *Mount*, here the outcome of a new trial would likely be different without Graham's testimony.

Accordingly, we find Williams satisfied the fourth and final inquiry of the after-discovered evidence test. Therefore, Williams is entitled to relief on his PCRA claim.

Due to the unique circumstances of this case, we must address the procedures the trial court must take following remand. On June 27, 2018, Williams filed a second petition asking the Pennsylvania Supreme Court to

---

[4] Because of the internal affairs investigation, former Officer Graham resigned from the Philadelphia Police Department. *See* Appellee's Brief, at 11.

reassign his case to a different trial judge in the Court of Common Pleas of Philadelphia. In a decision filed on August 21, 2018, the Supreme Court denied relief, without prejudice, for Williams to raise the claim in this appeal before the Superior Court. Consequently, Williams reasserts, in his brief to this Court, that another trial judge should preside over this case. In its brief, the Commonwealth also argues reassignment to a different trial judge is necessary to avoid appearances of unfairness and partiality.

It is well-settled that we have the authority to appoint a new judge for further proceedings upon remand, where a party filed a motion to recuse the trial judge in the case. *See Commonwealth v. Whitmore*, 912 A.2d 827, 834 (Pa. 2006) (holding that the Superior Court cannot remove a trial judge *sua sponte*). The issue in this case is similar to scenarios where inadmissible and highly prejudicial evidence was presented to the trial court in earlier proceedings, which required reassignment to a different judge. *See Commonwealth v. Gibson*, 567 A.2d 724, 727 (Pa. Super. 1989); *see also Commonwealth v. Lewis*, 460 A.2d 1149, 1152 (Pa. Super. 1983). For example, in *Commonwealth v. Conti*, 345 A.2d 238, 245-246 (Pa. Super. 1975), this court held a new trial was required where in a non-jury trial the trial judge was informed through testimony that the defendant had pleaded guilty at his preliminary hearing. Likewise, in *Commonwealth v. Walls*, 396 A.2d 419, 421, n. 2 (Pa. Super. 1978), we held a new trial judge was

necessary when a judge heard highly prejudicial testimony prior to the trial, such as a withdrawn guilty plea.

Moreover, there is no need for an appellant to point to some specific acts of bias or prejudice by the former trial judge. As our Supreme Court stated in **Commonwealth v. Goodman**:

> Justice . . . requires that we relieve the defendant of the responsibility of establishing that the information in fact influenced the court's decision. If it is established that the information received during the pre-trial proceeding would have been incompetent in the subsequent proceeding and that it was of a sufficiently inflammatory nature to arouse a prejudice against the defendant he need not demonstrate that the information actually influenced the court's actions.

311 A.2d 652, 654 (Pa. 1973); **see also** ABA Standards for Criminal Justice: Special Functions of the Trial Judge, 6-1.6 & 6-1.9 (3d ed.).

We agree a new trial judge should be appointed upon remand. Williams' right to be tried before an impartial judge is necessary in this case because the trial judge heard highly prejudicial testimony at the first trial, which was a bench trial, and made credibility determinations in favor of a now discredited witness and against Williams. Our decision today is consistent with prior rulings of this Court where a trial judge should be reassigned based on hearing highly prejudicial information in an earlier proceeding.

In light of the above opinion, we direct the following:

- The Post Conviction Relief Act Petition filed on February 14, 2018, is granted and the Order of June 25, 2018 is reversed;

- The judgment of sentence dated January 16, 2009 is vacated;

- 17 -

- The judgment of sentence dated November 6, 2017 is vacated;

- The case is remanded for proceedings consistent with this opinion.

PCRA Order reversed. Probation revocation vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the opinion.

Judge Olson joins the opinion and files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/19