588 A.2d 997

In re Appeal of WEST PENN POWER COMPANY (regarding real estate tax assessment of Block and Lot Nos. 732–M–10, 15, and 20). (Three Cases)

WEST PENN POWER COMPANY, Appellant,

v.

BOARD OF PROPERTY ASSESSMENT APPEALS AND REVIEW, Springdale Borough, Allegheny Valley School District and County of Allegheny, Appellees. (Three Cases)

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 1991.

Decided March 21, 1991.

528

C. Andrew McGhee, Rose, Schmidtt, Hasley & DiSalle, Pittsburgh, with him, John L. Munsch, West Penn Power Co., Greensburg, for appellant.

John M. Means, Markel, Schafer & Means, P.C., Pittsburgh, for appellees.

NARICK, Senior Judge.

This matter comes before us on an appeal of a real estate tax assessment imposed by Springdale Borough, Allegheny Valley School District and Allegheny County (collectively referred to as "Municipalities) on property which is leased by West Penn Power Company (West Penn). We affirm.

The subject property is comprised of three small parcels of land, each of which has erected thereon a steel oil tank. The assessed value of the land is negligible compared to that of the oil tanks.[1] At issue are the assessments for the years *1980* through *1989* inclusive.[2]

The property is titled in the name of Mellon Bank, N.A., Trustee. Mellon administers the property pursuant to a trust agreement dated December 15, 1973, which created the Oil Storage Facilities Equipment Trust No. 2. Under the terms of the trust agreement, Maryland National Bank is the "Owner Participant" and other corporations are "Loan Participants."

The subject property was transferred to the trust by West Penn through a sale-leaseback agreement and other related documents. The trust leases the underlying property and the tanks thereon to West Penn for profit, and under the terms of the lease, West Penn is obliged to pay all taxes.

The following additional facts were stipulated by the parties:

**1.** The assessments for each of the years at issue are as follows:

|  | #732–M–10 | #732–M–15 | #732–M–20 |
|---|---|---|---|
| Land | $1,850 | $1,850 | $2,160 |
| Improvements | $103,000 | $103,000 | $116,000 |
| Total | $104,850 | $104,850 | $118,160 |

**2.** The assessments were made pursuant to Section 201 of the General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–201.

16. The parcels and tanks are a part of West Penn's Springdale Power Plant, which is located partly in Springdale Borough and partly in Springdale Township.

17. The construction of the three tanks occurred simultaneously with the installation of oil-fired boilers when the Springdale Plant was converted from coal to oil.

18. Each of the tanks is connected by piping to a pumphouse and, in turn, to two oil-fired boilers in the main plant building.

19. Heavy oil is pumped from barges on the Allegheny River into the three oil tanks, where the oil is stored until needed to fire the boilers.

20. Each tank is fitted with steam heating elements connected to small boilers, which heating elements are used to heat the heavy oil prior to use so that it is liquid enough to flow through the piping that connects the tanks to the boilers.

21. The piping, pumphouse, unloading facilities, steam heating elements and small boilers described in paragraphs 18, 19 and 20 are owned by Mellon as Trustee and leased to West Penn. Also leased are the items described in the mortgage which is Exhibit "L" of the Skarminiti deposition. However, other than the items located on the three block and lot parcels, no other items are involved in this case.

22. Once heated, oil is pumped from the tanks and fired in the boilers, producing steam which drives the turbines, which drive the generators, which produce electricity.

23. The oil from the tanks is the sole source of fuel for the boilers.

24. Two of the three tanks have not held oil since approximately 1984.

West Penn appealed the assessments to the Allegheny County Board of Tax Assessments, Appeals and Review (Board) and the Board upheld the assessment. West Penn appealed to the Court of Common Pleas of Allegheny County, and the matter was referred to an arbitration board which endorsed the Board's decision. The decision of the

arbitrators was appealed to the common pleas court for a decision on stipulated facts.[3] The court affirmed.

The trial court reasoned that 1) the tanks were real estate; 2) the tanks were not eligible for the machinery equipment exclusion of Section 201(a) of the Law, and were therefore taxable; and 3) that West Penn, as lessee of the property, had standing to appeal the tax assessment.[4]

The issues presented to this court are: 1) whether the fact that the tanks are owned by a non-manufacturing concern disqualifies that property for the machinery/equipment exclusion of the Law, and 2) whether the oil tanks qualify for the machinery/equipment exclusion of the Law. We hold that the ownership of the tanks does not alter the availability of the exclusion, but that the exclusion does not apply to the oil tanks in question.

Section 201(a) of the Law provides that all real estate shall be subject to taxation except "machinery, tools, appliances and other equipment contained in any mill, mine, manufactory or industrial establishment...."

The Municipalities argue that this provision of the law should only apply to machinery and equipment which is used for manufacturing by the owner of the property. They argue that since the property in question is owned by

3. The parties filed a document entitled "Trial Stipulations" which set forth the "facts for the trial of these consolidated cases." The trial court's opinion states that the appeals "were submitted to the writer of this opinion for *a decision in the nature of a case stated.*" (Emphasis added.) In this appeal the parties did not address the question whether this was a case stated for the *judgment* of the trial court, from which no appeal would lie. *Clearfield Bank & Trust Co. v. American Manufacturer Mutual Insurance Company,* 344 Pa.Superior Ct. 588, 497 A.2d 247 (1985). Because the parties refer to stipulated facts, and because the trial court ambiguously refers simultaneously to both a *decision* and a *case stated,* we will treat this case as one submitted to the trial court for a *decision* based on stipulated facts and not as a case stated.

4. The issue of West Penn's standing to appeal the real estate assessment as the lessee of the property was not raised by the appellees and is therefore waived. *Kuehner v. Parsons,* 107 Pa.Commonwealth Ct. 61, 527 A.2d 627 (1987), *petition for allowance of appeal denied sub nom. Kuehner v. Lower Towamensing Township,* 517 Pa. 626, 538 A.2d 879 (1988).

the trust but used by the lessee, West Penn, the property cannot qualify for the tax exclusion. If we were to adopt this reasoning, we would be substantially interfering with commerce in a way we do not believe the legislature intended. For example, if a parent corporation owned non-manufacturing property and leased it to a subsidiary, it would lose the tax benefit, since the property was owned by one concern and used by another. Similarly, non-taxable manufacturing property held in investment trusts would lose the tax benefit when the property was leased to another enterprise.

The Supreme Court of Pennsylvania explained that the legislature's purpose in enacting this provision was to encourage industry and manufacturing in Pennsylvania. *Jones & Laughlin Tax Assessment Case*, 405 Pa. 421, 175 A.2d 856 (1962). The court's opinion also observed that the provision *excluded* the property from taxation, rather than providing for an exemption. *Id.* Since machinery and equipment is excluded based on its role in manufacturing, we hold that the commercial structure of the ownership of such property does not alter the tax exclusion.

Turning our attention to the second issue, however, we find that the oil tanks do not qualify as machinery or equipment used in manufacturing. The Pennsylvania Supreme Court in *Jones & Laughlin,* interpreted the relevant portion of the Law to mean that improvements which are used solely and directly in the manufacturing process are excluded from real estate tax, but that a structure that is only used for storage does not meet the requirements of the exclusion. Among the numerous categories of property at issue in that case were loading docks and quenching towers. The court held the docks were not excluded but that the quinching towers were.

Since the Supreme Court's opinion in *Jones & Laughlin,* we have decided two cases involving storage tanks similar to the tanks now considered. In the first of these cases, *United States Steel Corp. v. Board of Revision of Taxes*

*and Appeals of the City of Clairton,* 27 Pa.Commonwealth Ct. 422, 366 A.2d 637 (1976), we held that tanks which were used to store ammonia did not qualify for the tax exclusion because they were not used directly in the manufacturing of ammonia, nor were they necessary and integral parts of the process. We did not believe that the fact that the tanks also refrigerated the ammonia was a significant reason to permit the exclusion.

More recently in *Gulf Oil Corp. v. Delaware County Board of Assessment Appeals,* 88 Pa.Commonwealth Ct. 341, 88 Pa.Cmwlth. 341, 489 A.2d 321 (1985), we held that oil tanks were a necessary part of oil refining, and consequently, were not taxable real-estate. We distinguished *United States Steel* because the *Gulf Oil* tanks then in question were used to heat and mix the oil before it could be refined. The process in the tanks took three to five days before the other production could proceed.

The oil tanks now in question are more analogous to the ammonia tanks of *United States Steel* then to the oil tanks of *Gulf Oil.* Here the tanks are used only for storage of fuel and are not an integral part of the process for generating power. Although there is incidental heating while the oil is stored in the tanks, we do not believe that the heating can be distinguished from the incidental refrigeration of the ammonia of *United States Steel.*

Consequently, we hold that the tanks do not qualify for the machinery/equipment exclusion from real estate tax.

Accordingly we affirm.

## ORDER

AND NOW, this 21st day of March, 1991, the opinion of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.